<div style="margin-left:auto">D<small>EBT</small>.</div>

## Barnett, Administrator of Towles *vs* Stephens' Administrator.

*Case* 139.

<div align="center">A<small>PPEAL</small> <small>FROM</small> <small>THE</small> H<small>ARDIN</small> C<small>IRCUIT</small>.</div>

<div align="center">*Assetts. Administrators. Slaves.*</div>

*June* 1.

J<small>UDGE</small> E<small>WING</small> delivered the Opinion of the Court.

*The points presented for revision.*

T<small>HIS</small> case was before this Court at the fall term, 1838, on the appeal of Stephens' administrator, and the main features of the case, together with the principles then settled, will be found reported in 7th *Dana*, 257. But few additional facts were established on the second trial, and none calculated materially to change the aspect of the case. Two questions only are now raised, which we deem necessary to be noticed, that were not then settled.

1. Are the *hire* and *increase* of the slaves in contest assetts in Barnett's hands as administrator.

2. If they are, can the hire which has accrued after the date of the writ, up to the finding of the jury, be assessed and found as assets in his hands.

*The hire and increase of slaves in the possession of an adm'r. are assetts in his hands for administration, as much so as the slaves are; he is an accredited trustee & bound to make hire and account for both hire & increase.*

We are clearly of opinion that the affirmative of both these propositions is true. As an administrator, holding the slaves as acknowledged assets, their hire and increase are as much assets in his hands, and for which he stands accountable as the slaves themselves. He is an accredited trustee, bound to hire them out, and to account for all the increase and profits, as well as for the slaves themselves. And it has been said that even if he sell them, without a necessity to do so for the payment of debts, that he is accountable, not only for the value of the slaves but for their hire, to the distributees. Barnett's contract of purchase being fraudulent and *void as to creditors*, the slaves are as much *assets* in his hands as administrator, for the *payment* of *debts*, as if the pretended purchase had not been made, and being assets in his hands for that purpose, he is equally accountable for increase and hire.

And it was the duty of the jury not only to find whether he had well and truly administered all the assets that

had come to his hands, but if they found that he had not, to find also the assets that had come to his hands and were unadministered, and the *value* thereof; and in estimating the value it was their province and their duty, not only to ascertain and assess the value of the slaves, but also the value of their *hire*, up to the finding of the verdict. For the one as well as the other, are assets in the hands of the administrator for the payment of debts.

Nor is there any thing in so estimating the hire, inconsistent with the well established analogies of the law. In detinue for slaves, the jury having found that the defendant did detain, are required not only to assess their value but also the value of their *hire up to the finding* of the jury. And in a proceedng in chancery against a trustee or fraudulent purchaser, each may be made liable, not only for the value of slaves held in trust or by a fraudulent purchase, but also for the hire up to the *final decree.*

There being no error in the giving or refusing instructions by the Circuit Court, and the case having been fairly submitted to the jury, and upon facts which authorized their finding, at least to the extent of the judgment rendered, the judgment is affirmed with costs, &c.

*B. Hardin* for appellant, *Cates & Lindsey* for appellee.

In a suit against an adm'r. the jury should estimate the hire and increase of slaves up to the day of their finding, as assets—so is hire estimated in *detinue* and so the Chancellor requires trustees to account.